**Harry GINSBERG, Plaintiff,**

v.

**GEORGE STERN ADVERTISING AGENCY, INC., a corporation, Ernest Stern, and Allan Schwartz, Constable, Defendants.**

**Civ. A. No. 70–1441.**

United States District Court,
W. D. Pennsylvania.

Feb. 23, 1971.

A. Morris Ginsburg, Pittsburgh, Pa., for plaintiff.

David Alpern, Pittsburgh, Pa., for defendants.

Before VAN DUSEN, Circuit Judge, and SORG and KNOX, District Judges.

SUR PLEADINGS AND PROOF

PER CURIAM:

The plaintiff, Harry Ginsberg, on July 22, 1963, for a consideration amounting to $33,000.00, acquired the rights and obligations of prior tenants under the terms of a written lease covering certain storeroom premises, located at 3839 William Penn Highway, Monroeville, Pennsylvania, wherein he conducted a delicatessen and sandwich shop business. Plaintiff continued to comply with the terms of said lease until the month of August 1970. The defendant, George Stern Advertising Agency, Inc., acquired title to said premises on November 18, 1969, by deed from a trustee in bankruptcy, and on November 25, 1969, it also became the assignee of the lessor's interest in the aforesaid lease. By letter of October 12, 1970, plaintiff having failed to pay the monthly rental of $333.33 due for each of the months of August, September, and October 1970, the defendant landlord (Stern), per its attorney, advised the plaintiff (Ginsberg) of its intention to commence in December 1970 legal proceedings for collection of amounts due under the lease unless he cured his delinquency

prior to that time.[1] A similar letter was sent to Ginsberg on November 11, 1970, setting forth a further delinquency. No reply to Stern's attorney having been made, the constable defendant (Schwartz), acting on behalf of defendants, distrained the business property of Ginsberg on the leased premises to satisfy a claim of $4,815.00 on December 10, 1970, and, pursuant to the provisions of the Pennsylvania Landlord and Tenant Act, 68 P.S. § 250.302 et seq., gave notice of sale to be held at 9:30 A.M. on December 22, 1970.

The complaint in the instant action was filed on December 21, 1970, the day before the scheduled sale, challenging the constitutionality of the Landlord and Tenant Act, *supra*, and seeking, inter alia, a temporary restraining order against the proposed sale. An immediate hearing on the motion for temporary restraining order was held before the district judge to whom the case was assigned. At the hearing, Stern reduced its claim to $2,050.00 and Ginsberg tendered a check for $1400.00 to cover rent admittedly due plus the costs of distraint proceedings. It also appeared that Ginsberg was the owner of substantial assets, including the restaurant equipment under distraint valued at $12,000.00 to $15,000.00, a $13,000.00 equity in his residence building (exclusive of household furnishings, and an automobile not under distraint); that he was maintaining a daughter in college to whom he had given an automobile for trade-in purposes; and that, while he testified (somewhat evasively) to certain encumbrances and bills payable, his net assets clearly represented more than adequate collateral with which to acquire the sum of $700.00, which was sufficient to settle the landlord's claim at that time. The motion was denied on the conclusion that a restraining order was not required to "prevent irreparable harm." The sale scheduled for December 22, 1970, was then postponed to December 29, 1970, at which time Stern's claim was further reduced to the sum of $1,690.00. Ginsberg failed to meet the demand, and the distrained goods were sold by the constable at public sale to Stern for the bid amount of $2,500.00.

The current three-judge court was constituted on December 30, 1970, and a final hearing on the application for a permanent injunction and on the constitutional issues raised by Ginsberg was held on February 8, 1971. The defendant Stern moved at the conclusion of the plaintiff's case for dismissal under Rule 41(b) of the Federal Rules of Civil Procedure.

The commercial lease which gives rise to the controversy between the parties reads, with respect to the amount of rent claimed, as follows:

### ARTICLE I

"* * * the Tenant hereby covenants and agrees: (a) To pay to the landlord as minimum base rent for the demised premises the sum of Four Thousand and no/100 per annum ($4,000.00) dollars, in equal monthly installments of Three Hundred Thirty-Three and 33/100, ($333.33) dollars, in advance, on the first day of each and every month during the term hereof. * * *"

and

(m) "To pay, as additional rental, Tenant's pro-rata share of any increases in real estate taxes which may be imposed against the Landlord or chargeable against the property of which the demised premises are a part, during the term of this lease or any renewal or extension thereof, after the first permanent and complete assessment is made against the said property, such pro-rata share to be

---

1. It is noted that the lease also provided for a payment of 10% of the monthly rental "as additional rental for Tenant's share of the cost of * * * illuminating, cleaning and maintaining the common parking area * * *." (par. 1). Paragraph m of the lease contained a provision for a third item of rent to cover the "pro-rata share of any increase in real estate tax."

based upon the relation which the square foot area of the premises demised herein bears to the total square foot area rented in the entire Shopping Center or property of Landlord."

Concerning the landlord's procedural rights, the said lease provides, inter alia:

### ARTICLE III

(b) "The Tenant hereby waives to the Landlord the benefit of all laws now or hereafter in force in this state or elsewhere exempting property from liability for rent, or for debt, expressly waiving the Act of Assembly entitled 'An Act for the Relief of the Poor' approved the 10th day of April, 1828, and its several supplements; also Act No. 20 approved the 6th day of April, 1951, entitled 'The Landlord and Tenant Act of 1951,' as amended."

The conditions of the aforesaid lease were accepted in toto by the terms of the assignment adopted by Ginsberg on July 22, 1963, at which time he was represented by his counsel, whose signature appears as a witness to plaintiff's signature on the lease. Plaintiff testified that his present attorney had represented him at the time of his acquisition of the lease in 1963 and had explained its terms to him.[2] He was aware that the landlord had remedies under that lease.

Although plaintiff's testimony makes clear that a competitive shopping center near the leased premises opened in 1969, making the 12-month period prior to the fall of 1970 "a very bad year" for him and leaving him without cash to pay his rent,[3] he conceded that he had a $13,000 equity in his home, as well as furniture, silver, dishes, clothes washer, drier, linens, blankets, two television sets, etc.

All the parties to this suit are Pennsylvania citizens and less than $10,000 is claimed in the state court distraint proceeding sought to be enjoined.

After careful consideration, we have concluded that on this record there has been no showing of any deprivation of plaintiff's personal rights by the distraint and sale for $2500 of the commercial property on the leased premises and, hence, this court has no jurisdiction over the subject matter of this civil rights action. See Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969); Davenport v. Berman, 420 F.2d 294, 296 (2d Cir. 1969); National Land & Investment Co. v. Specter, 428 F.2d 91, 98–100 (3d Cir. 1970); Fuller v. Volpe, 351 F.2d 323, 327 (3d Cir. 1965); Weddle v. Director, Patuxent Institution, 436 F.2d 342 (4th Cir. 1970); Bussie v. Long, 383 F.2d 766, 769 (5th Cir. 1967); Howard v. Higgins, 379 F.2d 227 (10th Cir. 1967); cf. Gray v. Morgan, 371 F.2d 172, 174–175 (7th Cir. 1966); Ream v. Handley, 359 F.2d 728 (7th Cir. 1966).

There has been no showing that plaintiff cannot secure employment in the delicatessen business in which he has over 40 years' experience, and he testified that he has never been on welfare. On this record, the jurisdictional reasoning of Santiago v. McElroy, 319 F.Supp. 284, 291 (E.D.Pa.1970), relied on by plaintiff, is inapposite.

The foregoing constitutes the findings and conclusions of the court.

---

2. Plaintiff testified that in 1963 he thought he made a "good business deal" when he bought the sandwich shop business, including the rights of the previous tenant's under the lease, for $33,000.

3. In accordance with a confession of judgment clause in the lease, judgment has been entered against plaintiff but he has been able to afford the institution of a civil action in the state court to open or strike such confessed judgment and such suit is pending. See First National Bank in DeKalb v. Keisman, 47 Ill.2d 364, 265 N.E.2d 662. Cf. Swarb v. Lennox, 314 F.Supp. 1091 (E.D.Pa.1970).